No. 45,844

West Wichita Homeowners Association, Inc., and John William Souza, *Appellants*, v. City of Wichita, and The Honorable Board of City Commissioners, *Appellees*.

(477 P. 2d 951)

Opinion filed December 12, 1970.

*Ronald W. Mayes*, of Wichita, argued the cause and was on the brief for the appellants.

*Eugene L. Pirtle*, Assistant City Attorney, argued the cause, and *John Dekker*, City Attorney, was with him on the brief for the appellees.

The opinion of the court was delivered by

Fontron, J.: The plaintiff, John William Souza, resides in the western reaches of Wichita. His property, in Westlink 5th addition

has been included within a benefit sewer district created to pay for the construction of a sewer designated as Submain 2, Westlink Sewer. The West Wichita Homeowners Association, Inc., likewise a plaintiff in this action, is composed of residents and taxpayers of the benefit district created to pay for the sewer, and is headed by Souza as its president. Mr. Souza and the association have joined hands in bringing a class action on behalf of the property owners in the benefit district.

This action seeks to enjoin the spreading and levy of special assessments against the benefit district to pay for the construction of Westlink Submain 2. The trial court denied injunctive relief and entered judgment in favor of the city. The plaintiffs have appealed.

By way of background, we glean from the record that the West-link Sewer System was designed in 1955 when the area was outside the city, and that an improvement district was formed to pay for the entire system, including a sewer line leading to the disposal plant at the southwest corner of the district. The cost of this sewer line, which is sometimes referred to in the evidence as a submain, was assessed to and born by the property within the original West-link Benefit District created at that time. None of the property represented in the present action was ever a part of or included within the original benefit district.

At a subsequent date Westlink 5th Addition came into being, and the several properties involved in this lawsuit were temporarily connected to and served by the sewer line, or submain, constructed and paid for as part of the original Westlink Sewer System. However, this happy situation could hardly be expected to continue indefinitely, and it came to end in 1968 with the construction of Westlink Submain 2 and the creation of a second benefit sewer district to pay for its construction.

After Submain 2 was completed, the flow of sewage from properties in the newly created Westlink Benefit District 2 was diverted or transferred from the old submain to the new one. The result is that now Souza and his neighbors are no longer served by the old sewer line originally constructed and paid for by others, but by the new line, Submain 2, which empties into an interceptor or trunk-line sewer which leads directly to the treatment plant.

In challenging the creation of the new benefit district, and the validity of the assessments levied against it, the plaintiffs' con-

tentions center largely around terminology. They object specifically to the use of the term "submain," arguing that the word is not found in the legislation relating to sewers and they reason, accordingly, that no statutory authority exists for charging a benefit district with the cost of building such a hybrid creature as a submain.

· The statute involved in the semantic dispute is K. S. A. 13-1013, which in general governs the construction of municipal sewerage and drainage systems, provides for the creation of districts to construct the same and authorizes the levy of special assessments against property within said districts to pay the costs of construction. The statute is somewhat long and will not be quoted verbatim. It is sufficient for our purposes to say it classifies sewers and sewer districts into three categories, interceptor, main and lateral, and authorizes cities of the first class to create sewer districts to build and construct sewers of each classification and to assess the cost thereof against lands within the respective districts. A limiting provision prohibits the transfer of any property which has already paid its full proportion for either a main or lateral sewer to another main or lateral sewer district by which it would become liable for the construction of another main or lateral sewer.

In presenting their case, the plaintiffs point out that a submain is not one of the three types of sewer mentioned in the statute; that a submain is not a main, as such (and never the twain shall meet); and thus a submain falls beyond reach of the statute. In short, plaintiffs insist that the construction of a submain sewer and the assessment of its cost to property within a sewer district can not be said to come within the scope of K. S. A. 13-1013.

We believe that plaintiffs' argument lacks substance. In our opinion it was answered effectively by the trial court in its second conclusion of law:

"Where a municipality has mislabeled a main sewer line as a 'submain', the function and use will determine the legal classification of such sewer, and in this set of facts, the Court concludes that Submain 2, Westlink Sewer, is a main sewer and is the proper subject for special assessment under K. S. A. 13-1013."

Judging from the record, we believe it evident that members of the civil engineering profession who practice in the area of municipal water and sewage control employ a variety of terms, when speaking of sewers, which are not found in K. S. A. 13-1013. The divergency between the scientific jargon of the engineer and the

somewhat broader and less technical terminology used by the legislator in drafting legislation should not blind us, however, to the legislative purpose behind K. S. A. 13-1013. That purpose, as we conceive it to be, is to provide for the construction of, and payment for, every type of sewer main required for a complete and comprehensive sewerage and drainage system.

While it might have been less confusing, so far as this case is concerned, for the legislature to have been more specific in its use of technical engineering phraseology in drafting the statute or, on the other hand, for the city to have followed more closely the statutory language in drafting its ordinances, we experience no difficulty in saying that Westlink Submain 2 comes within the purview of 13-1013. As the record clearly reveals, the function of Submain 2 is to serve as a conduit for the effluent from several laterals to a large interceptor sewer, the laterals being, in this connection, small sewer lines to which the house connections are attached.

The instant case does not represent the first occasion on which Wichita's sewer problems have surfaced before this court. In *Lacey v. City of Wichita*, 180 Kan. 323, 304 P. 2d 558, certain property owners and taxpayers living within a benefit district created to pay for constructing a sewer known as Dry Creek Sub-Main No. 2, filed suit to enjoin the city clerk from certifying a special assessment for the cost of building the same. In their petition the plaintiffs alleged their properties were connected with Sub-Main No. 1, and that they had paid assessments for its construction (although the latter allegation proved to be false). In holding that the plaintiffs had not proved a cause of action, this court stated that before they would be entitled to relief they must show either (1) that they had participated in paying for Sub-Main 1 or (2) that Sub-Main 2 would be of no benefit to them. Since the evidence failed to establish either one of those two alternatives, said the court, the plaintiffs had not proved their right to injunctive relief.

It is quite true that *Lacey* does not go into the intricacies of engineering terminology differentiating between mains and submains, for that issue was not raised. Nonetheless, the case establishes guidelines for the recovery of relief in this type of an action. The proof required, as expressed in those guidelines, has not been met in this case. The record affirmatively shows, by Souza's own admission, that although he had previously been

assessed for laterals, he had not been assessed for—nor had he paid for—additional sewers of any kind, with the sole exception of Submain 2. The city engineer also testified that Souza and other property owners in Westlink Benefit District 2 had been assessed previously for laterals but not for submains, although they had temporarily used a submain for which they had not been assessed. The trial court's finding that Souza and his fellow taxpayers had not previously paid special assessments for a main—or submain— was fully supported by the evidence.

Respecting benefits, although this topic was not strongly stressed either before the trial court or here, there was evidence that the original Westlink Sewer System was not designed to handle the area now served by Westlink Submain 2; that use of the old or original submain by persons living in what is now the Submain 2 area was permitted on a temporary basis only; that the old submain will become overloaded in the future; that "health and sanitation problems require a design containing a large safety factor due to the fact sewers will last 80 years or more"; that Submain 2 will drain a couple of square miles or more; and that the interceptor sewer into which it drains will have future submains connecting with it. This evidence sufficiently supports the trial court's general finding in favor of the city. (See cases in 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, §§ 417, 418.)

An additional point need be clarified, even though it was not greatly emphasized in the appeal. The plaintiffs have asserted, particularly before the trial court, that as a matter of municipal policy, the cost of constructing sewer mains, such as Submain 2, had always been assessed against and paid by the city of Wichita itself. Thus they argue that the assessment against their properties rather than against property in Wichita at large, constitutes unlawful discrimination. Counsel for the city conceded during the trial that if Westlink Submain 2 were to be classified as a main line, then it would be paid for by the city at large rather than by assessments levied against property in the benefit district. However counsel explained that in making the concession, which was done by stipulation, he did not intend to admit the city lacked authority to levy two assessments—one for laterals and one for mains.

There was a good bit of jockeying between counsel over the meaning of words and descriptive terms, and we would only add to the general confusion by delving deeply into their confrontations.

Out of the welter of words we believe it may safely be said the following picture emerges: It has been the policy in Wichita that the city at large will bear the cost of constructing the big trunk line or interceptor mains, which gather sewage from large areas in the city and carry it to disposal plants. However, it is also city policy to assess against property within benefit districts the cost of constructing lesser lines, be they denominated laterals, mains, submains, branches or otherwise, and that the same property may be assessed for the construction of both laterals and submains.

Construing concessions and assertions on the part of counsel in conjunction with the evidence of record, we are convinced that no pattern of discrimination or arbitrary action has been shown. The plaintiffs are being charged with their proportionate share of the construction costs of two types of sewer, i. e., the laterals which empty into a larger gathering main or submain, and the main or submain itself, which in turn leads to and deposits its load in a large interceptor or trunk main which takes the sewage to the disposal plant. The cost of building the sewers which fall within the first two categories has been properly assessed against the property of Souza and his fellow property owners, while the expense of constructing the interceptor sewer into which Submain 2 empties, comes within the classification for which the city of Wichita pays.

We perceive nothing irregular or pernicious in such a division of costs between a city and its citizens. In our judgment the plan does not contravene either the letter or the spirit of K. S. A. 13-1013.

No error has been made to appear and the judgment of the court below is affirmed.